UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TERESA GLOSENGER,**

        Plaintiff,

  v.

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

        Defendant.

Case No. 3:12-cv-1774-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge**:

    Plaintiff, Teresa Glosenger ("Glosenger"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 USC § 405(g) and § 1383(c). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket # 25). Because the Commissioner's decision is supported by substantial evidence, it is affirmed.

///

1 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Glosenger filed applications for SSI and DIB in August 2009, alleging disability as of January 1, 2007, due to generalized anxiety disorder, dysthymic disorder, and a cognitive disorder. Tr. 145-53, 177.[1] After the Commissioner denied her applications initially and upon reconsideration (Tr. 80-93), Glosenger requested a hearing which was held on April 7, 2011. Tr. 47-71. On April 15, 2011, Administrative Law Judge ("ALJ") Cynthia Rosa issued a decision finding Glosenger not disabled. Tr. 27-41. The Appeals Council denied Glosenger's subsequent request for review on August 2, 2012 (Tr. 1-3), making the ALJ's decision the final Agency decision. Glosenger now seeks judicial review of that decision.

## BACKGROUND

Glosenger was 45 years old at the time of the alleged onset date. Tr. 39, 172. She completed high school in 1979 and has past relevant work as a security guard. Tr. 178, 183. Glosenger alleges that she stopped working on January 1, 2007, due to generalized anxiety disorder, dysthymic disorder, cognitive disorder, anxiety in employment situations, lack of self-esteem and confidence, preoccupation with rejection, and difficulty concentrating and making routine decisions. Tr. 177.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on April 11, 2013 (docket # 10).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099; 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs

exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ found that Glosenger had not engaged in substantial gainful activity after the alleged onset date of January 1, 2007.  Tr. 32.  At step two, the ALJ found that Glosenger's anxiety disorder, dysthymic disorder, and cognitive disorder were severe impairments.  *Id*.  At step three, the ALJ found that Glosenger did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 33.

The ALJ next assessed Glosenger's RFC and determined that she could perform work at all exertional levels, with the following nonexertional limitations: she can understand, remember, and carry out short 1- to 2-step instructions; she should have no public contact and only brief, structured interactions with co-workers; and "she can perform limited tasks not requiring changes more than occasionally."  Tr. 35.  At step four, the ALJ found Glosenger could not perform her past relevant work.  Tr. 39.  At step five, based on the testimony of a vocational expert ("VE"), the ALJ determined that Glosenger could perform jobs that exist in significant numbers in the national economy, including office custodian, linen room worker, and motel maid.  Tr. 40.  The ALJ therefore concluded that Glosenger is not disabled.  Tr. 41.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028,

1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).

## DISCUSSION

The ALJ found Glosenger "not credible" as to the extent and nature of her symptoms.  Tr. 35.  Glosenger challenges this finding and also asserts that the ALJ improperly evaluated the medical opinion evidence.

**I.     Credibility**

    **A.     Glosenger's Testimony**

At the hearing, Glosenger testified that she has held many different jobs in the security industry, but is unable to keep a job because anxiety interferes with her performance.  Tr. 51-52.  She has difficulty absorbing information and does not work quickly.  Tr. 52-55.  Although her antidepressant medication helps somewhat, she gets angry or frustrated at customers and has walked off jobs because she is unable to multi-task.  Tr. 53-56.  Glosenger also testified that she would like to work full-time and currently spends two hours per week cleaning for a woman with Parkinson's disease.  Tr. 56, 59.  She further stated that she "probably" cannot lift over 25 pounds.  Tr. 60.

///

///

### B. Legal Standard

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F3d at 1036 (citation and internal quotation marks omitted). Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson*, 359 F3d at 1197 (citations omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284; *see* SSR 96–7p, 1996 WL 374186 (July 2, 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F3d at 1284.

### C. ALJ's Findings

Here there is no evidence of malingering. Therefore, the ALJ was required to provide clear and convincing reasons to discredit Glosenger.

The ALJ cited a number of reasons for finding Glosenger not fully credible. First, she found that Glosenger's "functional limitations are not as significant and limited as she alleges" based on her activities of daily living. Tr. 36. In support, the ALJ cited Glosenger's testimony that she is able to perform household chores and cleaning; manage money; shop for groceries; run three times per week; take computer classes; use public transportation; and work twice a week for a woman with Parkinson's disease. *Id.* Daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001). Glosenger argues that the ALJ failed to explain how her activities of daily living relate to the anxiety that she experiences in the workplace. However, the ALJ cited the activities of daily living with regard to Glosenger's "functional limitations," not necessarily her mental limitations. In that respect, the ALJ reasonably inferred that Glosenger's level and nature of daily activities rendered her less disabled than alleged.

Second, the ALJ reasoned that Glosenger's mental status examination findings were not congruent with her claim of disabling mental limitations. Tr. 36. In support, she pointed to notes from examining psychologist Kay L. Stradinger, PsyD, that Glosenger could complete simple addition calculations and spell "world" forwards and backwards, but had difficulty with concentration or persistence when completing serial sevens. Tr. 36, 457. The ALJ also noted Dr. Stradinger's statements that Glosenger "was able to concentrate well enough to complete the evaluation" and that while her "persistence was noted as shorter than average, especially as related to immediate memory, 'the pace of the evaluation was average.'" Tr. 36, citing Tr. 455. Minimal objective findings can undermine a claimant's credibility when other additional specific findings are present. *Burch v. Barnhart*, 400 F3d 676, 680-81 (9th Cir 2005). Given all of

Dr. Stradinger's findings, the ALJ properly found inconsistencies with Glosenger's testimony as to the severity of her mental limitations.

Third, the ALJ found that Glosenger "has not always followed through with appointments, recommendations and referrals" despite the fact that she had regained her insurance. Tr. 36-37, 63. Conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F3d at 751. The record contains multiple recommendations that Glosenger seek consistent mental health treatment, stress management, coping skills treatment, and anger management. Tr. 235, 241, 354. Yet, as the ALJ noted, she only sought "limited mental health treatment and only brief counseling 'relating to living situation problem' in 2005, 2008, and 2009." Tr. 36-37, citing Tr. 395, 454. At the time of the hearing, Glosenger testified that despite regaining her insurance, she kept mental health appointments for the sole purpose of medication management. Tr. 36-37, 53-54, 63. On this record, Glosenger's minimal attempts to follow through with recommended mental health treatment constitute a clear and convincing reason to discount her testimony regarding the severity of her mental health limitations. *Parra*, 481 F3d at 751.

In sum, the record supports the reasons given by the ALJ to support her credibility finding. If valid reasons support an ALJ's determination, then the ALJ's reliance on other erroneous reasons may be harmless error. *Carmickle v. Comm'r, Soc. Sec. Admins*, 533 F3d 1155, 1162 (9th Cir 2008). The critical issue is whether the ALJ's ultimate credibility determination is adequately supported by substantial evidence in the record. *Id*. Here, the ALJ cited clear and convincing inconsistencies to find Glosenger not fully credible.

///

///

II.     **Medical Opinion Evidence**

   A.     **ALJ's Findings**

The ALJ considered opinion evidence from Dr. Stradinger and two other examining psychologists: Keli J. Dean, PsyD, and Sharon M. Labs, PhD.  Tr. 37-38.

Based on a clinical examination in April 2010, Dr. Stradinger opined that Glosenger could perform "simple and repetitive" tasks, but "would have a difficult time interacting independently, appropriately and effectively and on a sustained basis with supervisors, co-workers and the public given her mood issues, her cognitive issues and her personality issues." Tr. 458.  She felt that Glosenger "might do better in a job setting that provided her structure, support, and accountability" and "would also likely require assistance in managing interpersonal conflicts," especially at the start of a new job.  *Id*.  The ALJ gave this opinion "some weight" but also found it "somewhat speculative."  Tr. 37-38.

Based on an examination in July and August 2007, Dr. Dean opined that Glosenger has difficulty with "mental control" and "a significant deficit in her ability to learn new information."  Tr. 38, 351-56.  She opined that Glosenger could not engage in multitasking or significant interpersonal contact.  *Id.*  Dr. Dean also noted that Glosenger needs "more time to learn new tasks" and "more frequent breaks to assist with managing anxiety symptoms." Tr. 356.  Dr. Dean recommended that Glosenger be provided the following accommodations for employment and training settings:  a job coach, frequent positive feedback when learning new skills, infrequent interactions with others, multiple modalities for learning new information, cues to recall information, praise and positive reinforcement, establishing written goals, extra time for test-taking, repetition of instructions, excuse from social functions, meetings, or group discussions, frequent breaks to manage anxiety symptoms, and division of large assignments into

smaller tasks or steps. Tr. 355-56. The ALJ gave Dr. Dean's opinion "some weight," but gave her list of recommendations and accommodations "less weight." Tr. 38.

Dr. Labs examined Glosenger in 2004 and opined that she was "not suited well for a security [guard] position involving multi-task activities and extensive interaction with the public and coworkers." Tr. 235. Dr. Labs stated that "given her cognitive deficits, she would do best in a position that involves minimal interaction with others . . . in an environment that has minimal distractions." *Id*. Dr. Labs specifically recommended a "well structured and well supervised" position "which minimizes multi-tasking, work at high pace or under significant stress and which involves limited decision-making and judgment." *Id*. She assessed Glosenger's GAF score at 60[2] and noted that Glosenger would benefit from being "followed by a psychiatrist." *Id*. The ALJ gave this opinion "significant weight."

Glosenger contests the ALJ's rejection of portions of the opinions by Dr. Stradinger and Dr. Dean as speculative and also challenges the ALJ's acceptance of Dr. Labs's opinion.

B.  **Legal Standard**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F3d at 1164. The Ninth Circuit distinguishes between the opinions of treating, examining, and non-examining physicians. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An

---

[2] The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 27-33 (4th ed., text rev., 2000). Axis V is the Global Assessment of Functioning (the "GAF"), which reports the clinician's judgment of the individual's overall functioning. *Id* at 32-33. A GAF score of 51 – 60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id* at 34.

uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991). In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F3d at 1040. An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### C.    Dr. Stradinger's Opinion

While Glosenger argues that the ALJ erred by rejecting Dr. Stradinger's opinion, the ALJ clearly incorporated the crux of Dr. Stradinger's opinion into the RFC by limiting Glosenger to no public contact, only brief, structured interactions with coworkers, limited tasks with short 1- to 2- step instructions and not requiring more than occasional changes. Tr. 35, 38. A limitation to "perform simple, routine, repetitive sedentary work, requiring no interaction with the public" can accommodate a claimant's moderate limitations in concentration, persistence and pace. *Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1173-75 (9th Cir 2008). To the extent that the ALJ rejected the remainder of Dr. Stradinger's opinion as "somewhat speculative," that characterization is fully supported by Dr. Stradinger's equivocal language ("might do better" and "would also likely require").

Glosenger also contends that the ALJ erred by not incorporating Dr. Stradinger's opinion that she "would have a difficult time interacting independently, appropriately, effectively, and on

Page 11 – OPINION AND ORDER

a sustained basis with supervisors, coworkers and the public" due to her "limited social and coping skills." Tr. 458. She interprets this language as precluding her from all interaction with supervisors and coworkers. The ALJ's limitation that Glosenger could have "brief, structured interactions with coworkers" may not be identical to, but reasonably corresponds with, Dr. Stradinger's opinion by minimizing stress on Glosenger and is consistent with Dr. Labs's opinion. Because the ALJ's conclusion is based on a rational reading of the record, it must be upheld even if reasonable alternative interpretations exist. *Burch*, 400 F3d at 679.

### D.     Dr. Dean's Opinion

The ALJ gave only "some weight" to Dr. Dean's list of recommended accommodations for employment because it was "inconsistent with the record as a whole, including other medical opinions." Tr. 38. Dr. Dean's opinion as to the extent of accommodations needed were broader than and, therefore, arguably inconsistent with Glosenger's limitations as assessed by Drs. Labs and Stradinger. Thus, the ALJ was required to provide specific, legitimate reasons for rejecting her opinion. *Lester*, 81 F3d at 830.

The ALJ merely noted that the RFC reflected "the record as a whole including . . . claimant's activities of daily living," but did not provide any specific reason for rejecting Dr. Dean's recommended accommodations. Tr. 39. The ALJ, however, incorporated Dr. Dean's affirmative limitations into the RFC by finding that Glosenger could perform only simple, routine tasks with no multi-tasking. She further limited Glosenger to brief and structured interaction with coworkers, no public contact, short 1- to 2-step instructions, and tasks not requiring changes more than occasionally. Tr. 38-39. These limitations fully incorporate the substance of Dr. Dean's opinion.

Page 12 – OPINION AND ORDER

Glosenger contends that the ALJ erred by omitting Dr. Dean's exhaustive list of recommended accommodations because Dr. Dean did not opine that she was capable of performing simple routine activities without those accommodations. However, Dr. Dean's list of accommodations were couched as mere "recommendations," which, while useful in determining Glosenger's ideal work environment, are distinct from her functional capacity which the RFC is designed to capture. As the RFC appears to include all of the affirmative limitations set forth in Dr. Dean's opinion, the court must uphold the ALJ's decision.

E.     **Dr. Labs's Opinion**

The ALJ credited the opinion of Dr. Labs, a neuropsychologist, who evaluated Glosenger in 2004. Tr. 37. As Glosenger does not allege that her limitations changed significantly since 2004, the court rejects her argument that the ALJ's reliance on Dr. Labs's assessment constituted legal error. Further, Dr. Labs opined in February 2011 that Glosenger's prognosis was "[g]ood with job change out of security [guard] work." Tr. 485. The ALJ also considered this more recent opinion from Dr. Labs. Tr. 37. On this record, the ALJ did not err in crediting Dr. Labs's opinion in her disability determination.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision that Glosenger is not disabled is AFFIRMED.

DATED this 16th day of April, 2014.

                                                    s/ Janice M. Stewart
                                                    Janice M. Stewart
                                                    United States Magistrate Judge